UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| TERRANCE D. BROTHERS, | Case No. 2:17-CV-641 JCM (BNW) |
| Plaintiff(s), | ORDER |
| v. | |
| DWIGHT NEVEN, et al., | |
| Defendant(s). | |

Presently before the court is pro se plaintiff Terrence Brothers's motion for summary judgment. (ECF No. 69). Former High Desert State Prison ("HDSP") warden Dwight Neven and physician Dr. Romeo Aranas (collectively "defendants") responded in opposition (ECF No. 75).

Also before the court is Brothers's motion in support of his motion for summary judgment. (ECF No. 76). Defendants responded in opposition. (ECF No. 83).

Also before the court is defendants' motion for summary judgment. (ECF No. 77). Brothers responded in opposition (ECF No. 85) to which defendants replied (ECF No. 88).

**I.  BACKGROUND**

Brothers is an inmate at HDSP. He noticed a boil growing in his genital area in January 2016. (Am. Compl., ECF No. 5 at 5). The boil burst later that month, causing Brothers excruciating pain. (*Id.*). He could hardly walk because of the friction between his legs and clothing. (*Id.*). His almost yearlong complaints about the ruptured boil discharging fluid "fell on deaf ears"; HDSP staff would reply that "surgery was pending" and prescribed several antibiotics in the meantime. (*Id.* at 8). His informal, first level, and second level grievances were denied or went unanswered. (*Id.* at 10). Brothers was not taken into a

**James C. Mahan**
**U.S. District Judge**

fistulotamy surgery until November 2, 2016. (*Id.*). The surgery was "botched" and Brothers endured serious pain until a corrective surgery on September 11, 2017. (*Id.*). After screening Brothers's amended complaint, the court allowed a deliberate indifference to serious medical needs claim against Warden Neven and Dr. Aranas and to proceed. (ECF No. 6 at 8). The parties now both move for summary judgment. (ECF Nos. 75, 77).

## II. LEGAL STANDARD

Summary judgment is proper when the record shows that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law."[1] Fed. R. Civ. P. 56(a). The purpose of summary judgment is "to isolate and dispose of factually unsupported claims or defenses," *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986), and to avoid unnecessary trials on undisputed facts. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).

When the moving party bears the burden of proof on a claim or defense, it must produce evidence "which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted). In contrast, when the nonmoving party bears the burden of proof, the moving party must "either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of [proof] at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). An issue is "genuine" if there is an adequate evidentiary basis on which a reasonable factfinder could find for the nonmoving party and a

---

[1] The court can consider information in an inadmissible form at summary judgment if the information itself would be admissible at trial. *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003) (citing *Block v. City of Los Angeles*, 253 F.3d 410, 418–19 (9th Cir. 2001) ("To survive summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rules of Civil Procedure 56.")).

**James C. Mahan**
**U.S. District Judge**

- 2 -

fact is "material" if it could affect the outcome under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).

The opposing party does not have to conclusively establish an issue of material fact in its favor. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). But it must go beyond the pleadings and designate "specific facts" in the evidentiary record that show "there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. In other words, the opposing party must show that a judge or jury must resolve the parties' differing versions of the truth. *T.W. Elec. Serv.*, 809 F.2d at 630.

The court must view all facts and draw all inferences in the light most favorable to the nonmoving party. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990); *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). The court's role is not to weigh the evidence but to determine whether a genuine dispute exists for trial. *Anderson*, 477 U.S. at 249.

### III. DISCUSSION

The court will first address Brothers's two motions and then turn to defendants' motion for summary judgment.

#### A. Brothers's Motion for Summary Judgment (ECF No. 69) and Motion in Support of Summary Judgment (ECF No. 76)

The court is mindful that Brothers is incarcerated and proceeding pro se. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (holding that pro se filings should be "liberally construed"). Still, pro se litigants must "comply with relevant rules of procedural and substantive law." *Faretta v. Cal.*, 422 U.S. 806, 834 (1975).

Brothers's motion for summary judgment is best construed as a motion for default. (ECF No. 69). He does not point to the record to meet his summary judgment burden and the court cannot grant summary judgment by default. *See Reinemann v. Satterberg*, 731 F.3d 914, 916–17 (9th Cir. 2013); LR 7-2(d) (exempting motions for summary judgment); *see also* Fed. R. Civ. P. 56 Advisory Committee Notes (2010) ("Summary judgment cannot be granted by default even if there is a complete failure to respond to the motion."). Instead, he

asserts that defendants have never answered any of his complaints as required by Rule 12(a)(1)(A)(i). (ECF No. 69 at 2). He says that "defendants appear to have conceded to [his] allegations" and he "must be granted a direct verdict." (*Id*.). Defendants respond that their failure to file an answer was from excusable neglect. (ECF No. 75 at 6). "The failure to file an answer was the result of a stay issuing in this matter (ECF No. 57) combined with the entry of the scheduling order." (*Id.*).

In any event, Brothers's motion is not addressed to the clerk and is not supported by an affidavit. Fed. R. Civ. P. 55(a) (mandating that a party's failure to plead or otherwise defend must be "shown by affidavit or otherwise"). The clerk's entry of default is a prerequisite for default judgment and Brothers would then not be entitled to default judgment as a matter of right. The decision to grant default judgment is in the court's discretion which is guided by the *Eitel* factors. *See Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). In short, a motion for summary judgment is the wrong procedural mechanism for seeking a default judgment. Brothers must follow the two steps in Rule 55. And it is not even clear at this juncture that the *Eitel* factors weigh towards default judgment. For these reasons, Brothers's motion (ECF No. 69) is DENIED without prejudice.

Brothers also filed a motion he styles as "motion in support of summary judgment." (ECF No. 76). He asserts that his motion for summary judgment went unopposed and he is thus entitled to summary judgment. (*Id.* at 2). Again, the court cannot grant summary judgment based on non-opposition. And defendants did in fact file a timely opposition—served via the electronic filing system—which Brothers now concedes. (ECF No. 84). For this reason, Brothers's motion in support of summary judgment (ECF No. 76) is DENIED.

**B. Defendants' Motion for Summary Judgment (ECF No. 77)**

**1. Deliberate Indifference Standard**

The Eighth Amendment prohibits cruel and unusual punishment and "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (internal quotation marks and citation omitted). The government "has an obligation to provide medical care for those whom it punishes by

incarceration." *Hutchinson v. United States*, 838 F.2d 390, 392 (9th Cir. 1988). A prison official violates the Eighth Amendment when he is deliberately indifferent to an inmate's serious medical needs. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). An inmate must establish both an objective and subjective element.

A medical need is serious if "failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal quotation marks and citation omitted). Serious medical needs include "the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (citation omitted).

A prison official is deliberately indifferent when he knows that the inmate faces "a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847; *see also Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014). In other words, the prison official's delay, indifference, or interference with medical care must be *purposeful*. *Jett*, 439 F.3d at 1096. Negligence or a "difference of medical opinion" is not enough. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). Even medical malpractice does not necessarily violate the Eighth Amendment. *Snow v. McDaniel*, 681 F.3d 978, 988 (9th Cir. 2012), *overruled in part on other grounds, Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014) (en banc).

Rather, the medical treatment must have been "medically unacceptable under the circumstances" and chosen in "conscious disregard of an excessive risk to [the prisoner's] health." *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996). When an inmate claims that a *delay* in treatment was deliberately indifferent, he must show that the delay led to further injury. *See Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985) (finding that failure to respond to repeated demands for surgery was not deliberate indifference).

. . .

## 2. Undisputed Facts

Defendants move for summary judgment on three grounds. (ECF No. 77). First, summary judgment should be granted for Neven because he did not know about or personally participate in Brothers's medical care. (*Id.* at 6–7 (citing *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1986)). Wardens seldom review medical grievances and Brothers's grievances were addressed by medical staff, the director of nursing, and Dr. Aranas. (*Id.*). Second, Brothers suffered no constitutional harm. (*Id.* at 7–8). He received prompt and reasonable medical care and his contrary contention is merely a difference in medical opinion. (*Id.*). Third, Neven and Dr. Aranas are entitled to qualified immunity because "there is no authority mandating [that] a medical official must disregard antibiotics and recommend surgery as the initial treatment." (*Id.* at 10). When Dr. Aranas evaluated Brothers, "he recommended Brothers see an outside specialist. It is unclear what more Dr. Aranas could have done." (*Id.*).

The court finds these facts are undisputed: On February 28, 2016, Brother submitted a medical kite notifying prison officials that a boil in his genital area had burst. (ECF No. 79-1 at 2). HDSP medical staff responded the very next day and scheduled Brothers for an appointment. (*Id.*). On March 9, Brothers submitted a second medical kite noting that the boil was still discharging fluid and requesting treatment. (*Id.* at 3). HDSP medical staff responded the same day and noted Brothers had been placed on sick call. (*Id.*). Brothers submitted a third medical kite on April 20, noting that none of his three prescribed antibiotics had stopped the discharge and that he was "tired of dealing with this." (*Id.* at 4). HDSP medical staff again responded promptly, scheduling Brothers for another medical appointment. (*Id.*).

HDSP medical staff prescribed Brothers six antibiotics from February to November 2016. (Cabrera Decl., ECF No. 77-2 at 3). Brothers received Keflex on March 21, 2016 (ECF No. 79-1 at 5) which is used to treat the bacterial infection that causes a boil. (ECF No. 77-2 at 3). When Keflex did not work, staff prescribed Rifampin and Bactrim DS, an oral broad spectrum antibiotic. (ECF No. 79-1 at 5). Staff prescribed Clindamycin and

James C. Mahan
U.S. District Judge

- 6 -

Hibiclen soap when those did not work. (*Id.*). Brothers was then prescribed Doxycycline, a "more powerful antibiotic used to treat skin infections, such as boils." (ECF No. 77 at 3; *see also* ECF No. 79-1 at 5). Brothers was also given bandages and gauze to alleviate the pain and discharge. (ECF No. 79-1 at 8–10).

When it became clear that antibiotics alone would not resolve Brothers's serious medical need, HDSP medical staff referred him to outside specialist Dr. Peter Caravella. (*Id.* at 16). Dr. Caravella evaluated Brothers's condition on July 18, 2016 and recommended a fistulotomy. (*Id.*). The very next day, the Utilization Review Panel (URP)—a committee which evaluates and approves requests for outside specialists—approved the surgery. (*Id.*). According to the official response to Brothers's second level grievance, the original date of his surgery was "cancelled by the surgeon's office for emergency reasons" and was "rescheduled for the soonest date possible." (ECF No. 77-4 at 2). Dr. Caravella eventually performed the surgery on November 2, 2016. (ECF No. 79-1 at 17). His surgeon's report noted that the surgery debrided out a fibrous type tissue, irrigated the wound with saline, and then packed the wound to ensure recovery. (*Id.*).

The surgery was unsuccessful. Brothers submitted a medical kite on December 9, 2016 stating that the boil was still discharging fluid "in the same manner it did for 9 months before the surgery." (*Id.* at 18). On December 23, an HDSP physician evaluated the surgical incision and did not recommend any follow-up treatment. (*Id.*). Yet HDSP medical staff reevaluated Brothers on February 17, 2017 and recommended another outside consultation. (*Id.* at 20). On June 16, an outside specialist determined that the boil had reoccurred and recommended another fistulotomy. (*Id.* at 22). The URP again promptly approved the recommendation. (*Id.* at 21). The second fistulotomy was performed on September 11, 2017. (*Id.* at 22). Brothers noted that he was "healing well" after this corrective surgery and requested that his medical hold be released on October 7. (*Id.* at 23).

The record undisputedly shows that prison officials promptly responded to Brothers's medical kites and prescribed several antibiotics. When it was clear that the antibiotics were inadequate, Brothers was referred to an outside specialist that recommended surgery which

James C. Mahan
U.S. District Judge

- 7 -

the URP promptly approved. It cannot be said that this course of treatment was "medically unacceptable under the circumstances" and chosen in "conscious disregard of an excessive risk" to Brothers's health. *Jackson*, 90 F.3d at 332. As correctional nurse Cabrera claims, "the purpose of prescribing antibiotics is to resolve the infection without resorting to surgical intervention as surgical intervention may result in complications." (Cabrera Decl., ECF No. 77-2 at 3). And Brothers did, in fact, endure complications from his first fistulotomy.

Brothers argues that he repeatedly informed HDSP medical staff that his prescribed antibiotics were not working and "defendant Aranas and defendant Neven should have and could have directed staff to get [his] surgeries done a lot sooner than the 590 days it took to finally fix [his] injury." (ECF No. 85 at 3). He says prescribing antibiotics was like "putting bandaids over a gunshot wound." (*Id.* at 2). Perhaps Brothers could have seen an outside specialist sooner. But again, a difference of opinion regarding medical treatment does not evince deliberate indifference. *Sanchez*, 891 F.2d at 242.

In sum, the court is sympathetic to Brothers's serious medical plight. But his plight does not rise to the level of a constitutional harm. The record is devoid of a prison official with a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834. When prison officials learned of Brothers's serious pain, they did not disregard it. They reasonably prescribed antibiotic after antibiotic and then approved a surgery which unfortunately had to be rescheduled and corrected. There is no evidence that the delay in surgery was because of "personal animosity" toward Brothers. *Jackson*, 90 F.3d at 332. *Cf. Snow*, 681 F.3d at 986 (reversing summary judgment because "the URP ignored the recommendations of specialists and treating physicians for reasons unrelated to [inmate's] medical need"); *Michaud v. Bannister*, No. 2:08-cv-01371-MMD, 2012 WL 6720602, at *7 (D. Nev. Dec. 26, 2012) (discussing a URP's denial of surgery).

Because Brothers does not create a genuine dispute over the subjective element of his deliberate indifference claim, summary judgment is GRANTED for defendants. And because there was no constitutional violation, the court will not reach defendants' argument

**James C. Mahan**
**U.S. District Judge**

- 8 -

that Neven did not personally participate in any constitutional violation or their affirmative defense of qualified immunity.

## IV. CONCLUSION

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that Brothers's motion for summary judgment (ECF No. 69) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that Brothers's motion in support of summary judgment (ECF No. 76) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that defendants' motion for summary judgment (ECF No. 77) be, and the same hereby is, GRANTED.

The clerk shall enter judgment and close this case.

DATED May 14, 2021.

_____
UNITED STATES DISTRICT JUDGE